NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MECCA & SONS TRUCKING, CORP., <br><br> Plaintiff, <br><br> v. <br><br> J.B. HUNT TRANSPORT SERVICES, INC., et al., <br><br> Defendants. | Civil Action No: 18-6330-SDW-CLW <br><br> **OPINION** <br><br> November 20, 2019 |

**WIGENTON**, District Judge.

Before this Court are Defendant J.B. Hunt Transport Inc.'s (incorrectly named as "J.B. Hunt Transport Services, Inc.") ("Defendant") and Plaintiff Mecca & Sons Trucking, Corp.'s ("Mecca" or "Plaintiff") Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's motion is **GRANTED as to Count Two and DENIED as to Count One** and Plaintiff's motion is **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

At some time prior to August 23, 2016, non-party ADM Logistics ("ADM") contracted with Mecca to transport a container of Fibersol, a pea protein,[1] from Jersey City, New Jersey, to Parke Toll Packaging ("Parke Toll") in Decatur, Illinois. (D.E. 15-2 ¶¶ 3-4; 18-1 ¶¶ 3-4; 19-1.)[2] The pea protein was packaged in twenty "Super Sacks" which were placed in a sealed container. (D.E. 15-2 ¶¶ 4, 13; 18-1 ¶¶ 4, 13; 14-4 Ex. A.) Mecca then arranged for Defendant to transport and deliver the shipment. (D.E. 15-7.) Defendant took possession of the sealed shipment on August 23, 2016, received a bill of lading, and acknowledged receipt of the shipment "at the point of origin . . . in good order." (D.E. 15-2 ¶¶ 17-18; 15-10; 18-1 ¶¶ 17-18.) Defendant then transported the sealed container via train from New Jersey to Landers, Illinois, where it arrived still sealed. (D.E. 15-11; 15-9 at 60:20-61:20, 62:12-20; 15-2 ¶ 21.) On August 30, 2016, non-party F&S Logistics ("F&S") attempted to deliver the shipment to Park Tolle in Decatur, where it was rejected by Parke Toll employee Seth Brown ("Brown") because the container seal was broken. (D.E. 15-2 ¶ 25; 15-13 (indicating that "customer refused load due to seal issues"); 15-14 (stating that "there was no seal on the trailer" and that "the receiver will not accept the load"); 15-15 at 60:24-61:8 (testifying that the sole reason the load was rejected was because it had no seal).) At that time, Brown also observed that one of the Super Sacks had fallen over, but neither Brown nor any other person examined the Super Sacks or tested their contents for damage or adulteration. (D.E. 15-2 ¶¶ 36-38.) F&S then returned the load to the railyard. (D.E. 15-18 at 4.)

---

[1] The parties dispute whether Fibersol is a "food product" or a "food additive," but the distinction is irrelevant for purposes of the instant motion. (*See* D.E. 15-2 ¶ 7; 18-1 ¶ 7.)

[2] Citations to "D.E. 15-2" refer to Plaintiff's Statement of [Undisputed] Material Facts and the citations contained therein. Citations to "D.E. 18-1" refer to Defendant's Response to Plaintiff's Statement of [Undisputed] Material Facts and the citations contained therein.

On September 23, 2016, Mecca submitted formal notice of claim to Defendant for loss of the load, (D.E. 15-22), which Defendant denied, arguing that although "there was a seal break on this load, there has been no indication of adulteration to the cargo . . . ." (D.E. 15-23.) On December 30, 2016, as a result of the rejection of the Fibersol shipment, ADM sued Mecca in Illinois State Court for breach of contract. (D.E. 14-5 at 22-25.) The parties ultimately settled, with ADM granting Mecca a release in exchange for payment of $63,425.00. (*Id.* at 26.) The release did not assign ADM's interest in the shipment to Mecca. (*See id.*)

On or about March 21, 2018, Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Hudson County, asserting a common-law claim of negligence (Count One) and a claim for violation of the Carmack Amendment, 49 U.S.C. § 14706 (Count Two) against Defendant and seeking $69,550.00 in damages. (D.E. 1-1.) Defendant removed to this Court on April 12, 2018. (D.E. 1.) Both parties subsequently filed for summary judgment and all briefing was timely filed. (D.E. 14, 15, 18, 19, 20, 21.)[3]

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is only "material" for purposes of a summary judgment motion if a

---

[3] The Court is in receipt of Plaintiff's letter dated July 12, 2019, (D.E. 24), submitting for the Court's review a decision by the Third Circuit denying panel rehearing in *Mecca & Sons Trucking v. White Arrow LLC*, 2019 WL 1338518 (3d Cir. 2019), as well as Defense counsel's letter dated the same day requesting that the Court treat Plaintiff's letter as an impermissible sur-reply and striking it from the record (D.E. 25.) Because Plaintiff's submission is not a substantive sur-reply, Defendant's request is denied.

3

dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations, speculations, unsupported assertions or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325). Further, the nonmoving party is required to "point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. Furthermore, in

deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible. *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002).

### III. DISCUSSION

#### A.

The Carmack Amendment imposes strict liability on motor carriers for goods lost or damaged in interstate commerce. *See Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.*, 718 F. App'x 110, 112 (3d Cir. 2017) (citing 49 U.S.C. § 14706); *Kotick v. Atlas Van Lines, Inc.*, Civ. No. 18-11916, 2019 WL 5388163, at *2 (D.N.J. Oct. 22, 2019); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Schneider Nat'l Carriers, Inc.*, Civ. No. 15-1401, 2018 WL 6573471, at *4 (D.N.J. Sept. 25, 2018). A "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). In contrast, a "broker" is "a person, other than a motor carrier[,] . . . that as a principal or agent sells, offers for sale, negotiates for, or holds itself out . . . as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). Generally, brokers are not liable under, nor do they have standing to bring suit pursuant to, the Carmack Amendment. *See Phoenix Assurance Co. v. K-Mart Corp.*, 977 F. Supp. 319, 325 (D.N.J. 1997); *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, Civ. No. 15-5343, 2017 WL 5725057, at *6 n.12 (D.N.J. Nov. 28, 2017) (explaining that liability under the Carmack Amendment does not apply to brokers); *Mecca & Sons Trucking Corp. v. White Arrow, LLC*, 763 F. App'x 222, 225 (3d Cir. 2019) (noting that the statute "does not grant brokers a right to sue").[4]

---

[4] The Court recognizes that in *White Arrow*, the Third Circuit held that Mecca had standing to bring suit under the Carmack Amendment even though it acted as a broker, under the "provision granting a right of action to a 'person

"Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." *Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc.*, Civ. No. 17-553, 2017 WL 3868702, at *2 n.2 (D.N.J. Sept. 5, 2017) (quoting *Hewlett-Packard v. Bros. Trucking*, 373 F. Supp. 2d 1349, 1352 (S.D. Fl. 2005)); *see also Phoenix Assurance Co.*, 977 F. Supp. at 326 (stating a company's relationships and actions, rather than its registration are dispositive of the company's "true identity"). In determining whether a broker acted as a carrier, courts have considered whether the party "accepted responsibility for ensuring delivery of the goods[.]" *CGU Int'l. Ins., PLC v. Keystone Lines Corp.*, Civ. No. 02-3751, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2004).

Although Plaintiff may at times hold itself out as a carrier, in this instance, by arranging for Defendant to transport the Fibersol shipment, Plaintiff acted as a broker. (*See* D.E. 14-4 Ex. A, B; 15-8.) As a broker, Plaintiff had no rights to the goods being shipped, and therefore, has no right to sue Defendant under the Carmack Amendment. The fact that Plaintiff settled a state law case brought against it by ADM does not independently confer standing because that settlement did not contain an assignment of ADM's interest to Plaintiff. As such, Plaintiff does not stand in ADM's shoes and has no cognizable interest in the shipment for purposes of its Carmack Amendment claim.

Even if Plaintiff had standing, the record does not support Plaintiff's claim. A party bringing a claim under the Carmack Amendment must show: "(1) delivery of the goods to the initial carrier in good condition; (2) damage of the goods before delivery to their final destination;

---

entitled to recover under the receipt or bill of lading.'" 763 Fed. App'x at 225 (citing 49 U.S.C. § 14706(a)(1)) (noting that "White Arrow has failed to demonstrate that Mecca is not a person entitled to recover its losses under this provision"). However, in that case, unlike here, White Arrow did not timely challenge Mecca's standing in the District Court. *See Mecca & Sons Trucking Corp. v. White Arrow, LLC*, 2017 WL 3981134, at *4-5 (D.N.J. Sept. 11, 2017).

and (3) the amount of damages." *Beta Spawn, Inc. v. FFE Transp. Svcs., Inc.*, 250 F.3d 218, 223 (3d Cir. 2001); *see also Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964) (holding that, under the Carmack Amendment, "in an action to recover from a carrier for damage to a shipment, the shipper establishes his prima facie case when he shows delivery in good condition, arrival in damaged condition, and the amount of damages."). Here, the record shows only that one of the twenty Super Sacks had tipped over upon delivery. No one examined the contents of the Super Sacks nor did anyone test the product contained therein to determine if the protein powder had been adulterated. (*See* D.E. 14-7 at 75:18-23; 76:8-77:4; 78:16-23; D.E. 14-5 at 39:16-40:4, 74:23-75:4.) The bill of lading did not require that the seal be intact for the shipment to be accepted, and the absence of the seal alone does not render the shipment damaged. *See Land O'Lakes, Inc. v. Superior Serv. Transp. of Wisc. Inc.*, 500 F. Supp. 2d 1150, 1156 (D. Wisc. 2007). Therefore, Defendant's motion for summary judgment as to Count Two of the Complaint will be granted.

B.

As to Count One, although 28 U.S.C. § 1367, permits federal courts to exercise jurisdiction over state law claims, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Stehney v. Perry*, 907 F. Supp. 806, 825 (D.N.J. 1995) ("[A] federal district court may decline to exercise its supplemental jurisdiction over state law claims if all federal claims are dismissed."); *Washington v. Specialty Risk Servs.*, Civ. No. 12-1393, 2012 WL 3528051, at *2 (D.N.J. Aug. 15, 2012) (noting that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims") (alterations in original) (citing *Hedges v. Musco*, 204 F.3d

109, 123 (3d Cir. 2000)) (internal citations omitted). Therefore, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law negligence claim and that claim will be dismissed and remanded to the Superior Court of New Jersey, Law Division, Hudson County.[5]

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** as to Count Two and **DENIED** as to Count One. Plaintiff's Motion for Summary Judgment is **DENIED** as to both counts. Count One of the Complaint is **DISMISSED** and remanded to the Superior Court of New Jersey, Law Division, Hudson County. An appropriate order follows.

                                                    /s/ Susan D. Wigenton
                                                   **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc:   Cathy L. Waldor, U.S.M.J.
      Parties

---

[5] Because this Court declines to exercise jurisdiction over Plaintiff's state law claim, it need not address whether that claim is preempted by the Carmack Amendment. *See, e.g.*, *Certain Underwriters at Interest at Lloyds of London v. United Parcel Serv. of Am., Inc.*, 762 F.3d 332, 336 (3d Cir. 2014) (noting that the Carmack Amendment "preempts all state or common law remedies available to a shipper against a carrier for loss or damage" arising from the shipment of goods).